IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Kathleen R. Hansen, et al.,    Case No. 3:03CV7236

      Plaintiff

v.    ORDER

United States of America, et al.,

      Defendant

      This is a Federal Tort Claims action in which the plaintiffs claim that the defendants, including a doctor funded through (and thus deemed employed by) the defendant United States, committed medical malpractice leading to the death of Timothy Hansen.

      Pending is a motion by the plaintiffs for sanctions against the defendant United States for its actions in causing the decision of the plaintiffs' principal liability expert witness, Dr. Michael Fine, to withdraw as an expert witness.

      For the reasons that follow, the motion shall be denied, though certain steps will be taken to remedy the government's unprofessional, though not sanctionable, conduct.

      After retaining Dr. Fine, plaintiffs disclosed their employment of him to the government on December 3, 2004. Plaintiffs provided a copy of Dr. Fine's curriculum vitae with their disclosure notice. That document showed that Dr. Fine is employed by the VA Pittsburgh Healthcare System, and gives his VA Healthcare office address.

Government counsel did not review Dr. Fine's curriculum vitae until after his report had been received and preparations were being made to take his deposition. On March 9, 2005, more than three months after Dr. Fine's curriculum vitae put the government on notice of his employment, government counsel concluded that testimony by Dr. Fine might contravene a provision of the Code of Federal Regulations barring testimony by government employees in cases in which the United States is a party.[1]

That day, government counsel emailed Regional VA Regional Counsel Terry Wolk, asking whether Dr. Fine currently was employed by the VA, and, if so, if his testimony would violate the regulation. On March 10, 2005, Mr. Wolk forwarded the inquiry to Jose H. Lopez, also a Regional Counsel with the VA. The VA has designated Mr. Lopez as one of its "Designated Agency Ethics Officials."

Instead of responding to the inquiry from government counsel about Dr. Fine's employment status and the effect of the regulation, Mr. Lopez e-mailed an ethics opinion about the regulation to Dr. Fine and advising him of the regulation and its significance. In addition to notifying Dr. Fine about the regulation, Mr. Lopez informed him that his participation as an expert violated the regulation. Mr. Lopez instructed Dr. Fine

---

[1] The regulation provides:

> Service as an expert witness.
> (a) Restriction. An employee shall not serve, other than on behalf of the United States, as an expert witness, with or without compensation, in any proceedings before a court or agency of the United States in which the United States is a party or has a direct and substantial interest, unless the employee's participation is authorized by the agency under paragraph (c) of this section. Except as provided in paragraph (b) of this section, this restriction shall apply to a special Government employee only if he has participated as an employee or special Government employee in the particular proceeding or in the particular matter that is the subject of the proceeding.

5 C.F.R. § 2635.805.

that he should "take immediate action to withdraw as an expert witness" and to confirm his compliance with that directive by e-mail. (Doc. 184, Exh. L).

In a response e-mail on March 11, 2005, Dr. Fine told Mr. Lopez that he had not been aware of the presence of the United States in this litigation. He also stated that he would withdraw as an expert for the plaintiff.

In the meantime, on March 10, 2005, government counsel had contacted a colleague, Marcia W. Johnson, Ethics Advisor in the United States Attorney's Office for this District, about Dr. Fine's apparent concurrent employment by the VA and retention as an expert by the plaintiffs. Ms. Johnson told government counsel that she could not take Dr. Fine's deposition, and that she should warn Dr. Fine about his ethical obligation under the regulation.

Ms. Johnson consulted with another VA Designated Agency Ethics Official about Dr. Fine's activities as a witness for the plaintiffs to determine whether Dr. Fine had obtained a waiver from the agency allowing him to testify. She learned that no waiver had been granted.

On March 11, 2005, Ms. Johnson contacted government counsel whose inquiries had first raised the issue. Ms. Johnson told government counsel that she should contact opposing counsel and request that he withdraw Dr. Fine as an expert in view of his status as a government employee who had not obtained the necessary waiver of the regulatory restriction on his testimony.

On March 11, 2005, Dr. Fine called plaintiffs' counsel about the e-mail from Mr. Lopez. Dr. Fine told plaintiffs' counsel that he would not testify in this case. Dr. Fine confirmed his refusal to testify in a letter dated March 11, 2005, to plaintiffs' counsel.

3

Later that day, plaintiffs' counsel spoke with government counsel. Government counsel, according to plaintiffs' counsel, stated that "not only might there be a conflict issue, but that 'criminal' statutes may have been violated." (Doc. 173).

After this conversation between counsel, this court was notified. A telephone conference was held that day with counsel, and a further conference was scheduled for March 14, 2005. At that conference, I *sua sponte* granted leave to plaintiffs' counsel to file the pending motion for sanctions.

### Discussion

I am persuaded that no one acted with any deliberate intent to do anything wrong. Until receiving the e-mail from Mr. Lopez, Dr. Fine did not know that the government was a party to this case or that there was any problem with his participation.

Plaintiffs' counsel was, in all likelihood, entirely unaware of the regulation. Their failure to alert Dr. Fine to the government's presence is understandable.

Through inattentiveness, government counsel did not learn about Dr. Fine's employment with the VA until three months after she technically was on notice of that employment. Though a casual glance at Dr. Fine's resume would have made her aware of the possible conflict under the regulation; I am satisfied that she was unaware of the situation until March 9, 2005, when she turned her attention to the anticipated deposition of Dr. Fine.

I conclude, accordingly, that no sanctions under Rules 11 or 37 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, or otherwise would be appropriate.

That is not to say that I do not fault government counsel for her failure to have called this situation to the attention of opposing counsel and the court before contacting Regional Counsel Wolk, who

forwarded the matter to Mr. Lopez. He, in turn, communicated directly with Dr. Fine before either plaintiffs' counsel or the court was aware of a possible problem.

The ostensible purpose of government counsel's initial e-mail to Mr. Wolk was to confirm Dr. Fine's continued employment with the VA and to confirm, as well, the applicability of the regulation. Aside from the unlikelihood that he had left his position with the government in the interval between the date of his resume and March 9, 2005, government counsel could – and in my view – should have contacted plaintiffs' counsel with her inquiry before raising the issue with Mr. Wolk. In contacting Mr. Wolk, moreover, government counsel by-passed, Ms. Johnson, her own office's ethical advisor.[2]

Instead of calling on, and thus invoking, the Agency's ethical machinery, counsel should have first alerted opposing counsel to the possible problem. That is a matter of courtesy and common sense. To the extent that government counsel had a bona fide doubt about Dr. Fine's continued government employment, her question could have readily been answered by plaintiffs' counsel. They, in turn, could have communicated directly with Dr. Fine, and moderated the impact on Dr. Fine of his apparent violation of the regulation. Getting the bad news from plaintiffs' counsel would, in all likelihood, have been substantially less traumatic than learning about it via an e-mail from an ethics attorney, with whom Dr. Fine, presumably, had had no prior contact.

Had plaintiffs' counsel been given the opportunity to consult with Dr. Fine, he might have remained willing to testify, if he could, and to find out whether such might be possible. Instead, Dr. Fine was told that

---

[2] Ms. Johnson, unfortunately, did not ask whether opposing counsel had been contacted, or suggest that such contact be made forthwith. Like the other government counsel, she appears not to have thought to suggest to government counsel that it would have been prudent to notify the court as well that there may have been a problem with Dr. Fine's further involvement.

he had been and would be violating a government regulation and instructed to withdraw immediately from further involvement in the case. This foreclosed consideration by him of alternatives.

Before sending this e-mail, Mr. Lopez should, in my view, likewise have exercised common sense and better judgment by simply responding to the request made of him in government counsel's original e-mail. She did not ask for anything else other than some advice. Instead of simply giving that advice, Mr. Lopez, without indicating how a waiver might be sought, forced Dr. Fine off the witness stand.

Along the way, neither government counsel nor Mr. Lopez gave any thought to contacting plaintiffs' counsel and/or this court. The effect of their failure to do so, will, in all likelihood, keep the jury from hearing evidence from Dr. Fine first-hand that appears to be probative and relevant. While the difficulties caused to plaintiffs' counsel by the loss of their principal liability expert might not have been avoided had a more thoughtful approach have been taken, those difficulties have been compounded by the way in which this matter was handled by her and Mr. Lopez.

Finally, of lesser, but still considerable, concern, the way in which this matter was handled has caused disruption to this Court and the orderly management of its docket.

While the unprofessional conduct of those government attorneys may not, because not intentional, be sanctionable, that conduct is hardly laudable or acceptable.

Better judgment should have been exercised.

At this point what matters is getting this case back on track and reducing, to the maximum extent possible, the consequences to the plaintiffs of the loss of Dr. Fine as a witness. To that end:

he had been and would be violating a government regulation and instructed to withdraw immediately from further involvement in the case. This foreclosed consideration by him of alternatives.

Before sending this e-mail, Mr. Lopez should, in my view, likewise have exercised common sense and better judgment by simply responding to the request made of him in government counsel's original e-mail. She did not ask for anything else other than some advice. Instead of simply giving that advice, Mr. Lopez, without indicating how a waiver might be sought, forced Dr. Fine off the witness stand.

Along the way, neither government counsel nor Mr. Lopez gave any thought to contacting plaintiffs' counsel and/or this court. The effect of their failure to do so, will, in all likelihood, keep the jury from hearing evidence from Dr. Fine first-hand that appears to be probative and relevant. While the difficulties caused to plaintiffs' counsel by the loss of their principal liability expert might not have been avoided had a more thoughtful approach have been taken, those difficulties have been compounded by the way in which this matter was handled by her and Mr. Lopez.

Finally, of lesser, but still considerable, concern, the way in which this matter was handled has caused disruption to this Court and the orderly management of its docket.

While the unprofessional conduct of those government attorneys may not, because not intentional, be sanctionable, that conduct is hardly laudable or acceptable.

Better judgment should have been exercised.

At this point what matters is getting this case back on track and reducing, to the maximum extent possible, the consequences to the plaintiffs of the loss of Dr. Fine as a witness. To that end:

1. Counsel for the government shall, before or at the next telephone conference, notify the court and counsel whether (assuming, without undertaking to confirm, that Dr. Fine were willing to do so), the government would grant a waiver, thereby permitting Dr. Fine to appear as a witness.

2. If the government would grant such waiver, this court would communicate with Dr. Fine, explaining that such waiver would be granted, and that he thus would be able to testify, if he were willing to do so, without contravening any restriction on his testimony; this court would suggest to Dr. Fine, if such appeared appropriate, that, if he did not wish to testify as a witness for the plaintiffs, he could and would be called as a court's witness;

3. In the event that the government would not grant a waiver (or if Dr. Fine, even if a waiver were forthcoming, would decline to testify), leave would be granted to the plaintiff to procure one or more other expert liability witnesses; and

4. Plaintiffs' expert liability witnesses shall, to the extent permitted by Rule 703 of the Federal Rules of Evidence, be allowed to discuss Dr. Fine's report and the stature of its author, in the course of giving such expert's testimony; and

5. Whether to tax as costs against the government, in the event plaintiffs prevail, the monies expended by the plaintiffs in procuring and presenting successor expert testimony shall be reserved.

## Conclusion

In light of the foregoing, it is hereby

ORDERED THAT the motion of the plaintiffs for sanctions be, and the same hereby is denied.

A telephone scheduling conference is scheduled for May 11, 2005 at 12:30 p.m.

So ordered.

7

s/James G. Carr
James G. Carr
Chief Judge